IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02307-KLM

CHRISTOPHER GLENN, a/k/a Karen Glenn,

      Plaintiff,

v.

JAQUELINE BROWN, Community Parole Officer,
JOHN CRIBARI, Supervisor/Community Parole Officer, and
RICK RAEMISCH, Executive Director of the Colorado Department of Corrections,

      Defendants.

_____

**ORDER**

_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the court on Defendants' **Motion to Dismiss Amended Complaint** [#22][1] (the "Motion"). Plaintiff, who proceeds in this matter pro se,[2] filed a Response [#29] in opposition to the Motion, and Defendants did not file a reply. The parties have consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2(d). *See* [#17, #25, #27]. The Court has reviewed the entire case file and the applicable law and is sufficiently advised in the

---

[1] "[#22]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). The Court uses this convention throughout this Order.

[2] The Court must construe liberally the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). In doing so, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). In addition, a pro se litigant must follow the same procedural rules that govern other litigants. *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

premises. For the reasons set forth below, the Motion [#22] is **GRANTED.**

## I. Background

Plaintiff is currently an inmate in the custody of the Colorado Department of Corrections ("CDOC"), but for all times relevant to this case was a parolee in Denver, Colorado and resided at the Denver Rescue Mission and Crossroads Shelter. *Am. Compl.* [#9] at 5; *see Notice of Change of Address* [#21].[3] Defendants Jacqueline Brown ("Brown") and John Cribari ("Cribari") appear to have been Plaintiff's parole officers and Defendant Rick Raemisch ("Raemisch") is the former Executive Director of the CDOC. The circumstances of Plaintiff's parole form the basis for Plaintiff's claims.

The facts alleged in the Amended Complaint [#9] are sparse. While on parole, Plaintiff alleges that her Community Parole Officer, Defendant Brown, "force[ed] her to reside at the Denver Rescue Mission and Crossroads Shelter." *Am. Compl.* [#9] at 5. While staying at these locations, Plaintiff claims that she was "threatened and almost robbed" and subjected to "serious harm or injury".[4] *Id.* Plaintiff returned to Defendant Brown and "pleaded for a transfer," which Defendant Brown "vehemently refused". *Id.* Further, Plaintiff alleges that Defendant Cribari, a supervising Community Parole Officer, "failed to intervene" in her situation and that her circumstances were the result of a policy approved by Defendant Raemisch that leaves parolees homeless. *Id.* at 5-6.

Plaintiff initiated this lawsuit on August 10, 2018, *see Compl.* [#1], and filed an

---

[3] For the purposes of this Motion [#22], the Court takes all allegations in the Amended Complaint [#9] in the light most favorable to Plaintiff as the nonmovant. *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).

[4] Plaintiff fails to provide any further detail regarding what transpired.

Amended Complaint [#9] on October 1, 2018. On its face, the Amended Complaint asserts three separate claims. "Claim One" was dismissed as legally frivolous by the Court on October 11, 2018.[5] *Order to Dismiss in Part and to Draw in Part* [#11]. Accordingly, only "Claim Two" and "Claim Three" remain.

In "Claim Two," Plaintiff alleges that Defendant Brown's actions violated Plaintiff's Fourteenth Amendment rights "which tie[ ] into the cruel and unusual punishment clause of the Eighth Amendment." *Am. Compl.* [#9] at 5. Plaintiff further asserts in "Claim Two" that Defendant Cribari, in "a supervisory capacity and direct capacity," failed to intervene and protect Plaintiff from serious harm and injury; and was "deliberately indifferent to the conditions of confinement [P]laintiff was being forced to reside in." *Id.*

In "Claim Three," Plaintiff alleges that Defendant Raemisch permitted "a well-known policy of paroling offenders homeless [sic], especially at risk mental health offenders like [P]laintiff . . . without proper assistance, supervision and guidance[.]" *Id.* at 6. Plaintiff asserts that "[t]his violates [her] Fourteenth Amendment rights based upon the equal protection clause and [ ] procedural due process." *Id.* "Claim Three" further alleges that Defendant Cribari violated Plaintiff's Fourteenth Amendment rights to equal protection and procedural due process by failing to "properly train his subordinates," "act and intervene in appropriate situations," and "properly ensure at risk mental health offenders like [P]laintiff[ ] were assisted and supervised in accordance with proper parole standards[.]" *Id.* at 6-7.

---

[5] Senior Judge Lewis T. Babcock construed "Claim One" as asserting an Eighth Amendment claim against Defendants Brown and Cribari for Defendant Brown's failure "to assist plaintiff in obtaining her mental health treatment while on the intense supervision parole program." *Order to Dismiss in Part and to Draw in Part* [#11] at 2 (quoting *Am. Compl.* [#9] at 4). Judge Babcock dismissed this claim as legally frivolous "because parolees do not have a constitutional right to medical care." *Id.* at 3 (collecting cases).

Based on the foregoing, and liberally construing the Amended Complaint [#9], Plaintiff appears to assert the following claims: (1) violation of the Eighth Amendment based on Defendants Brown and Cribari's deliberate indifference to Plaintiff's safety; (2) violation of Fourteenth Amendment substantive due process against Defendants Brown and Cribari; (3) violation of Fourteenth Amendment equal protection against Defendants Raemisch and Cribari; and (4) violation of Fourteenth Amendment procedural due process against Defendants Raemisch and Cribari.

Plaintiff brings her claims against all Defendants in their individual and official capacities. *Id.* at 2-3. For relief, Plaintiff seeks the following: (1) actual damages in the amount of $12,500; (2) punitive damages in the amount of $1,000,000; (3) compensatory damages for emotional pain and suffering in the amount of $250,000; and (4) injunctive relief in the form of a Court order requiring the CDOC and Defendant Raemisch "to conduct an audit of the parole department, policies, and procedures, employee conduct, and training and report this audit to this Court with proposed changes, along with a proposed structured and training regime for supervising at risk mental health offenders, like [P]laintiff, to be approved and implemented by this Court." *Id.* at 10.

Defendants filed the present Motion [#22] on January 16, 2019, in which they seek to dismiss Plaintiff's remaining claims pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6). In short, Defendants argue that: (1) the Eleventh Amendment bars Plaintiff's claims for money damages against Defendants in their official capacities; (2) Plaintiff fails to state a claim under either the Eighth or Fourteenth Amendments; (3) Defendants are entitled to qualified immunity with respect to Plaintiff's Eighth Amendment claims; and (4) Plaintiff fails to state a claim for injunctive relief or compensatory damages. *See Motion* [#22] 4-13.

## II. Legal Standard

### A. Federal Rule of Civil Procedure 12(b)(1)

The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to test whether the Court has jurisdiction to properly hear the case before it. Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); Fed. R. Civ. P. 12(b)(1). Statutes conferring subject-matter jurisdiction on federal courts are to be strictly construed. *F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: facial attack or factual attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a facial attack on a complaint, the Court accepts the allegations of the complaint as true. *Id.* By contrast, when reviewing a factual attack on a complaint, the Court "may not presume the truthfulness of the complaint's factual allegations." *Id.* at 1003. With a factual attack, the moving party challenges the facts upon which subject-matter jurisdiction depends. *Id.* The Court therefore must make its own findings of fact. *Id.* In order to make its findings regarding disputed jurisdictional facts, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing." *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987)). The Court's reliance on "evidence outside the pleadings" to make findings concerning purely jurisdictional facts does not convert a motion to dismiss pursuant to Rule 12(b)(1) into a motion for summary judgment pursuant to Rule 56. *Id.*

## B.    Federal Rule of Civil Procedure 12(b)(6)

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed. R. Civ. P. 12(b)(6) (stating that a complaint may be dismissed for "failure to state a claim upon which relief can be granted").  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).  To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 570)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."  *Id.* (alteration in original) (internal quotation marks omitted).

To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in

the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n] that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a). *Iqbal*, 556 U.S. at 679 (first alteration in original) (citation and internal quotation omitted).

"Under Rule 8, a plaintiff must provide a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Tuttamore v. Lappin*, 429 F. App'x 687, 689 (10th Cir. 2011) (quoting Fed.R.Civ.P. 8(a)(2)). As with Rule 12(b)(6), "to overcome a motion to dismiss, a plaintiff's allegations must move from conceivable to plausible." *Id.* Indeed, "Rule 8(a)'s mandate . . . has been incorporated into the 12(b)(6) inquiry." *United States ex rel. Lemmon v. Envirocare of Utah*, 614 F.3d 1163, 1171 (10th Cir. 2010). Rule 8 enables "the court and the defendants to know what claims are being asserted and to determine how to respond to those claims." *Tuttamore*, 429 F. App'x at 689.

## C. Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Herrera v. City of Alburquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). When qualified immunity is asserted, a Plaintiff must show that: "(1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (citing *Pearson*, 555 U.S. at 231). "The determination of whether a violation occurred under the first prong of

the qualified immunity analysis turns on the substantive law regarding that right." *Davis v. City of Aurora*, 705 F. Supp. 2d 1243, 1255 (D. Colo. 2010). "With regard to the second [prong], the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances presented." *Herrera*, 589 F.3d at 1070 (quoting *Fogarty v. Gallegos*, 523 F.3d 1147, 1155 (10th Cir. 2008)). Judges are permitted to use their sound discretion in deciding which of the prongs should be addressed first. *Davis*, 705 F. Supp. 2d at 1255 (citing Pearson, 555 U.S. at 231).

### III. Analysis

### A.     Subject Matter Jurisdiction

The Court first addresses Defendants' argument that the Eleventh Amendment bars Plaintiff's claims for monetary damages against Defendants in their official capacities. *See Motion* [#22] at 4-5. The Eleventh Amendment bars recovery of monetary damages from individual state Defendants sued in their official capacities. *Dreismeier v. Fauvel*, No. 12-cv-01131-KLM, 2013 WL 1365766, at *3 (D. Colo. Apr. 3, 2013). To the extent that Plaintiff sues Defendants in their official capacities, "[s]uits against state officials in their official capacit[ies] should be treated as suits against the state." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)); *see also Duncan v. Gunter*, 15 F. 3d 989, 991 (10th Cir. 1994) (stating that state officers sued in their official capacity are not "persons" subject to suit under 42 U.S.C. § 1983). Thus, pursuant to the Eleventh Amendment, the Court lacks subject matter jurisdiction to adjudicate an action brought by a citizen of a state against the state itself, its agencies, or its officials in their official capacities for monetary relief. *See Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995).

Therefore, Eleventh Amendment immunity bars claims against individuals sued in their official capacities "for money damages and relief for prior acts." *See Hunt v. Colo. Dep't of Corr.*, 271 Fed. App'x. 778, 781 (10th Cir. 2008). Here, all Defendants are state officers with the Colorado Department of Corrections. Accordingly, the Motion [#22] is **granted** to the extent that Plaintiff's claims seeking monetary relief against Defendants Brown, Cribari, and Raemisch in their official capacities are **dismissed without prejudice** for lack of subject matter jurisdiction. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) ("[W]here the district court dismisses an action for lack of jurisdiction, . . . the dismissal must be without prejudice." (citations omitted)).

**B.      Eighth Amendment Claims**

Defendants next argue that Plaintiff's Eighth Amendment claims should be dismissed because Plaintiff fails to state a claim for relief under the Eighth Amendment and because Defendants are entitled to qualified immunity. *Motion* [#22] at 5-9. Specifically, Defendants argue that Plaintiff's status as a parolee negates any duty to protect her that could be imposed on Defendants by the Eighth Amendment. *Id.* at 5-8. The Court agrees.

To state an Eighth Amendment claim, a plaintiff must demonstrate that objectively, she is *incarcerated* under conditions that pose a substantial risk of serious harm, and that subjectively, prison officials were deliberately indifferent to her safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Smith v. Cummings*, 445 F.3d 1254, 1258 (10th Cir. 2006). "Mere negligence does not constitute deliberate indifference; deliberate indifference is equivalent to recklessness in this context." *Id.* (quoting *Verdicia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003)). Thus, "the official must 'both be aware of facts from which

the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996).

Notably, "[f]or a claim (like the one here) based on a failure to prevent harm, the inmate must show that [s]he is *incarcerated* under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834; *see DeShaney v. Winnebago Co. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989) (noting that the government's "affirmative duty to protect arises not from [its] knowledge of the individual's predicament or from its expressions of intent to help h[er], but from the limitation which it has imposed on h[er] freedom to act on h[er] own behalf"); *Birdsall v. Lee*, No. 08-cv-00081-WDM-MEH, 2008 WL 4080197, at *4 (D. Colo. Aug. 5, 2008), *report and recommendation adopted in part*, 2008 WL 4080194 (D. Colo. Aug. 28, 2008) (finding that a parolee could not state an Eighth Amendment claim for failure to protect because he was not incarcerated).

Here, Plaintiff was on parole and not incarcerated at the time the alleged Eighth Amendment violations occurred. "Though the state properly subjects [a parolee] to many restrictions not applicable to other citizens, [a parolee's] condition is very different from that of confinement in a prison." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). As Defendants note, Plaintiff "does not allege that she suffered any sufficient limitation on her freedom to 'act on h[er] own behalf' such that she was prevented [ ] from seeking and/or obtaining alternative housing . . . or that she attempted to do so and was prohibited." *Motion* [#22] at 6 (quoting *DeShaney*, 489 U.S. at 200).

Moreover, even if Plaintiff's claims were properly asserted under the Eighth Amendment, her allegations fail to demonstrate that Defendants Brown or Cribari acted, subjectively, with the requisite deliberate indifference to her safety. In the Amended

Complaint [#9], Plaintiff alleges that Defendant Brown "deliberately disregarded the violent environment surrounding the Denver Rescue Mission and Crossroads Shelter" and that Defendant Cribari acted with "deliberate indifference" in failing to intervene to protect Plaintiff from this harm. *Am. Compl.* [#9] at 5. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Iqbal*, 556 U.S. at 677 (quoting *Twombly*, 550 U.S. at 557). Although Plaintiff attempts to vaguely assert that Defendants Brown and Cribari "deliberately disregarded" or acted with "deliberate indifference" to Plaintiff's safety, she fails to sufficiently bolster these conclusory allegations with specific information about what these Defendants knew regarding the alleged safety risks Plaintiff faced and what these Defendants did in response.

Accordingly, Plaintiff's claims regarding Defendants' alleged failure to protect her from the safety risks at the Denver Rescue Mission and Crossroads Shelter are more properly analyzed under the Fourteenth Amendment, not the Eighth Amendment. *See Davis v. McCleary*, No. 17-cv-00659 (PKC), 2017 WL 2266856, at *3 (E.D.N.Y. May 23, 2017) (unpublished) ("Because the alleged constitutional violation occurred when Plaintiff was a parolee, his claims are appropriately analyzed under the Fourteenth Amendment's Due Process Clause, not the Eighth Amendment."). The Motion [#22] is therefore **granted** to the extent that Plaintiff's Eighth Amendment claims against Defendants Brown and Cribari are **dismissed with prejudice**. *Brereton*, 434 F.3d at 1219 ("A dismissal with prejudice is appropriate when where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

**C.      Fourteenth Amendment Substantive Due Process Claims**

The Fourteenth Amendment does not impose upon a state an affirmative obligation to ensure that its citizens are not deprived of life, liberty, or property.  *See DeShaney*, 489 U.S. at 195.  Therefore, "[a]s a general matter, . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197.    There are, however, two exceptions to this general rule: the "special relationship" doctrine and the "danger creation" theory.  *See Christiansen v. City of Tulsa*, 332 F.3d 1270, 1279-80 (10th Cir. 2003) (providing an overview of the special relationship doctrine and danger creation theory).

Pursuant to the special relationship doctrine, "if the state restrains an individual's freedom to act to protect himself or herself through a restraint on that individual's personal liberty, the state may thereby enter into a 'special relationship' during such restraint to protect that individual from violent acts inflicted by others."  *Armijo v. Wagon Mound Public Schools*, 159 F.3d 1253, 1261 (10th Cir. 1998).  "Absent involuntary restraint, however, no duty to protect arises under the special-relationship theory."  *Christiansen*, 332 F.3d 1270, 1280 (citing *Armijio*, 159 F.3d at 1261); *see also DeShaney*, 489 U.S. at 200 ("The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help h[er], but from the limitation which it has imposed on h[er] freedom to act on h[er] own behalf.").  In the Tenth Circuit, special relationships have been found "only in the case of persons who depend 'completely on the state to satisfy their basic human needs' - for example, prisoners, those involuntarily committed to mental institutions, and foster children."  *United States v. Patton*, 451 F.3d 615, 637 (10th Cir. 2006) (quoting *DeAnzona v. City & County of Denver*, 222 F.3d 1229,

1234 (10th Cir. 2000)).

The danger creation theory "applies only when a state actor affirmatively acts to create, or increases a plaintiff's vulnerability to, or danger from private violence." *Robbins*, 519 F.3d at 1251 (quoting *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001)).  To state a prima facie case under the danger creation theory, Plaintiff must show that:

> (1) state actors created the danger or increased [her] vulnerability to the danger in some way, (2) [she] was a member of a limited and specifically definable group, (3) the defendants' conduct put [her] at substantial risk of serious, immediate, and proximate harm, (4) the risk was obvious or known, (5) the defendants acted recklessly in conscious disregard of that risk, and (6) the conduct, when viewed in total, shocks the conscience.

*Id.* (citing *Ruiz v. McDonnell*, 299 F.3d 1173, 1182-83 (10th Cir. 2002)).   A plaintiff must also establish two "preconditions" to trigger application of the doctrine: "that the state actor engaged in affirmative conduct and that there was private violence." *McClain v. Denver Health and Hosp. Auth.*, No. 17-cv-02238-PAB-NRN, 2018 WL 4698595 at *4 (D. Colo. September 30, 2018) (quoting *Estate of B.I.C. v. Gillen*, 761 F. 3d 1099, 1105 (10th Cir. 2014).  Affirmative conduct for purposes of § 1983 should typically involve conduct that imposes an immediate threat of harm, which by its nature has a limited range and duration."  *Ruiz*, 299 F.3d at 1183; *see also Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 916 (10th Cir. 2012) (noting that invocation of the danger creation theory "necessarily involves affirmative conduct on the part of the state in placing the plaintiff in danger"). "Nonfeasance is insufficient to satisfy the first element of the danger creation theory's prima facie standard." *BPS v. Bd. of Trs. for Colo. Sch. for the Deaf and Blind*, No. 12-cv-02644-RM-KLM, 2014 WL 6990312, at *8 (D. Colo. April 24, 2014) (citing *Sutton*, 173 F.3d at 1238 n.13).  Nonfeasance means a defendant's alleged failure to take a particular course

of conduct.  *MAP v. Bd. of Trs. for Colo. Sch. for Deaf and Blind*, No. 12-cv-02666-RM-KLM, 2014 WL 3748642, at *10 (D. Colo. April 28, 2014).

Here, it is unclear which of the above exceptions Plaintiff intends to assert to establish her Fourteenth Amendment substantive due process claims against Defendants Brown and Cribari.  *See generally Am. Compl.* [#9] at 5.  Accordingly, the Court considers both doctrines against each Defendant.  Defendants contend that Plaintiff cannot establish a claim under the special relationship doctrine because she is not incarcerated, and thus the state has no duty to provide her safe housing.  *Motion* [#22] at 11.  Defendants further contend that Plaintiff has not alleged facts sufficient to place her within the danger creation theory exception.  *Id.*

### 1.    Defendant Brown

Plaintiff alleges that Defendant Brown "forc[ed] her to reside at the Denver Rescue Mission" and refused Plaintiff's "plea[ ] for a transfer due to being threatened and almost robbed."  *Am. Compl.* [#9] at 5.  Plaintiff asserts that this refusal subjected her to "the risk of serious harm and injury."  *Id.*  This is the extent of Plaintiff's allegations against Defendant Brown.

With respect to the special relationship doctrine, the Court agrees with Defendants that Plaintiff's allegations are insufficient for this exception to apply regarding Defendant Brown.  As Plaintiff's parole officer, Defendant Brown simply entered into a limited custodial relationship with Plaintiff.  *See Ciccone v. Ryan*, No. 14-cv-1325 NSR, 2015 WL 4739981, at *5 (S.D.N.Y. Aug. 7, 2015).  As noted above, however, "[t]he state has a special relationship with only 'individuals depend[ent] completely on the state to satisfy their basic human needs.'"  *DeAnzona*, 222 F.3d at 1234 (quoting *Maldonado v. Josey*, 975 F.2d 727,

-14-

732-33 (10th Cir.1992)) (brackets in original).  Plaintiff fails to demonstrate that she was completely dependent on Defendant Brown for her basic human needs pursuant to her parole.  *See Morrissey*, 408 U.S. at 482 ("We see, therefore, that the liberty of a parolee, although indeterminate includes many of the core values of unqualified liberty").  Accordingly, the Court finds that Plaintiff has failed to plead a special relationship with Defendant Brown.  *See id.*; *DeShaney*, 489 U.S. at 195 ("The [Due Process] Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security.").

Regarding the danger creation theory, Plaintiff pleads both nonfeasance and affirmative conduct in her Amended Complaint. Plaintiff alleges that Defendant Brown "vehemently refused" to transfer her to different housing, which is nonfeasance for the purposes of the danger creation exception.  *See Am. Compl.* [#9] at 5; *MAP*, 2014 WL 3748642, at *10.  In this instance, Defendant Brown's alleged nonfeasance did not create or increase the level of danger to Plaintiff, and is best construed as a failure to act.  *Id.* However, Plaintiff alleges that Defendant Brown "forced" her to reside at the Denver Rescue Mission and Crossroads Shelter, which satisfies the requirement for affirmative conduct under the danger creation theory.  *Am. Compl.* [#9] at 5.  Viewing this allegation in the light most favorable to Plaintiff, Defendant Brown's conduct is directed "at a discrete plaintiff" and allegedly increased the danger to her by limiting her choice of living arrangements.  *See Ruiz*, 299 F.3d at 1183.  Furthermore, the danger arising from "forcing" a parolee to stay at a location while on parole is not of "indefinite range and duration."  *Id.* Accordingly, the Court analyzes the sufficiency of Plaintiff's allegations in relation to the

six factor danger creation test.  *Robbins*, 519 F.3d at 1251.[6]

Although one of Plaintiff's allegations satisfies the precondition of affirmative conduct, the conduct alleged does not rise to reckless disregard or shock the conscience. In the Tenth Circuit, the "application of danger creation as a basis for § 1983 claims is reserved for exceptional circumstances." *Ruiz*, 299 F.3d at 1184.  To allege a prima facie case of state-created danger, a Plaintiff must "demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Uhlrig*, 64 F.3d at 574.  "In determining whether state action shocks the conscience, Courts consider three factors: '(1) the general need for restraint; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policy decisions impacting public safety.'" *McClain*, 2018 WL 4698595 at *5 (quoting *Briggs v. Johnson*, 274 F. App'x 730, 736 (10th Cir. 2008)).

Here, Plaintiff avers that Defendant Brown's conduct was conscience shocking and deliberate  because Ms. Brown "had reason to believe, had prior knowledge of, and deliberately disregarded the violent environment surrounding the Denver Rescue Mission and Crossroads Shelter[.]" *Am. Compl.* [#9] at 5.  However, this statement is conclusory in nature, rather than a factual allegation.  *See S. Disposal, Inc. v. Texas Waste Mgmt., a Div. of Waste Mgmt. of Texas, Inc.*, 161 F.3d 1259, 1262 (10th Cir. 1998) (although well-pleaded allegations must be accepted as true, courts need not accept conclusory allegations as true). Furthermore, Plaintiff's one allegation of private violence is insufficient

---

[6] Defendants do not dispute that Plaintiff has alleged an instance of private violence and satisfied the second precondition of the state-created danger theory.  Instead, Defendants generally assert that they are not liable for the actions of third parties.  *Motion* [#22] at 11.

to establish that Defendant Brown consciously disregarded a substantial risk or engaged in behavior that would shock the conscience of federal judges. *Compare McClain*, 2018 WL 4698595 at *5 (finding that one instance of sexual assault on a patient did not shock the conscience); *Ruiz*, 299 F.3d at 1184 (finding that a defendant's failure to conduct background checks did not shock the conscience); *with Briggs*, 274 F. App'x at 735-36 (finding that employees of Human Services shocked the conscience when they instructed persons to cease reporting child abuse.).[7] Given the sparse nature of Plaintiff's allegations, the Court finds that Defendant's alleged actions did not rise above ordinary negligence, and do not satisfy the requisite elements of a Fourteenth Amendment substantive due process claim based on the danger creation theory. *See Estate of B.I.C.*, 761 F. 3d at 1105.

Finding that no substantive due process violation has sufficiently been alleged against Defendant Brown, the Court concludes that Defendant Brown is entitled to qualified immunity on this claim. Accordingly, the Motion [#22] is **granted** to the extent that Plaintiff's Fourteenth Amendment substantive due process claim for failure to protect against Defendant Brown is **dismissed without prejudice**. *See Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (stating that prejudice should only attach to a dismissal when plaintiff has not made allegations "which, upon further investigation and development, could raise substantial issues").

---

[7] Critically, Plaintiff fails to allege further detail regarding the alleged violence at the Denver Rescue Mission and Crossroads shelter. *See Am. Compl.* [#9] at 5. In particular, any information regarding other instances of alleged violence, details of the alleged threats and attempted robbery she experienced, and whether this altercation occurred at the Denver Rescue Mission or Crossroads shelter are all omitted. *Id.* This information would speak to the conscience shocking nature of Defendant Brown's alleged conduct, as well as Defendant Brown's knowledge of the alleged circumstances of the shelter.

## 2.    Defendant Cribari

Plaintiff also sues Defendant Cribari for his alleged "failure to protect in a supervisory and direct capacity as he had actual knowledge of where [P]laintiff was to reside, the threat and attempted robbery against [P]laintiff that she reported, and failed to intervene whatsoever[.]" *Am. Comp.* [#9] at 5.

As an initial matter, Plaintiff's sparse allegations fail to show Defendant Cribari's personal participation in the allegedly unconstitutional conduct. Personal participation is an essential allegation in a civil rights action. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). To establish personal participation, Plaintiff must show that each defendant caused the deprivation of a federal right. *See Kentucky*, 473 U.S. at 166. There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise. *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). Supervisory officials may not be held liable for the unconstitutional conduct of their subordinates on a theory of respondeat superior. *See Iqbal*, 556 U.S. at  676. Furthermore,

> when a plaintiff sues an official under *Bivens* or § 1983 for conduct "arising from his or her superintendent responsibilities," the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well.

*Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 677). Therefore, in order to succeed in a § 1983 suit against a government official for conduct that arises out of his or her supervisory responsibilities, a plaintiff must allege and demonstrate that: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of

constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id.* at 1199.

Here, Plaintiff's limited factual allegations fail to demonstrate an "affirmative link" between Defendant Cribari's conduct and the alleged constitutional violations. Although Plaintiff asserts that Defendant Cribari had "actual knowledge" of where Plaintiff was residing and the safety risks she faced, such conclusory allegations, without more, fail to demonstrate that Defendant Cribari acted with the state of mind required to establish the alleged constitutional deprivation of Plaintiff's Fourteenth Amendment rights. *Id.*; *see S. Disposal*, 161 F.3d at 1262 (although well-pleaded allegations must be accepted as true, courts need not accept conclusory allegations as true).

Moreover, even if Plaintiff had adequately alleged Defendant Cribari's personal participation in the alleged depravation of her constitutional rights, she fails to demonstrate that either the special relationship exception or danger creation theory apply to her Fourteenth Amendment claim against this Defendant.

Plaintiff's relationship to Defendant Cribari is factually similar to her relationship with Defendant Brown, albeit further removed given that Defendant Cribari appears to have been Defendant Brown's supervisor. Accordingly, the Court adopts the analysis stated above and finds that Plaintiff fails to demonstrate that she was completely dependent on Defendant Cribari for her basic human needs pursuant to her parole. *See Morrissey*, 408 U.S. at 482. Accordingly, based on the facts as alleged, a special relationship did not exist between Defendant Cribari and Plaintiff. *Id.*; *see DeShaney*, 489 U.S. at 195 ("The [Due Process] Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security.").

With respect to the danger creation theory, Plaintiff's limited factual allegations are wholly insufficient to satisfy the first precondition's requirement for affirmative conduct. Plaintiff couches her allegations against Defendant Cribari as failures to act. *See, e.g.*, "Plaintiff is suing [Defendant] John Cribari for failure to protect . . . fail[ure] to intervene whatsoever. . . . failure to properly train . . . failure to properly ensure at risk mental health offenders like [P]laintiff, were assisted and supervised[.]" *Am. Compl* [#9] at 5-6. As stated above, failing to act is generally nonfeasance for the purposes of the danger creation theory. *See MAP*, 2014 WL 3748642 at *10. Furthermore, unlike with Defendant Brown, Plaintiff fails to allege that Defendant Cribari exerted any control over her living situation or that Defendant Cribari "forced" her to stay at the shelter. *Am. Compl.* [9] at 5. Without satisfying the affirmative conduct precondition of state-created danger, Plaintiff cannot state a claim pursuant to the danger creation theory. *Gray*, 672 F.3d at 925.

Finding that no substantive due process violation has sufficiently been alleged against Defendant Cribari, the Court concludes that Defendant Cribari is entitled to qualified immunity on this claim. Accordingly, the Motion [#22] is **granted** to the extent that Plaintiff's Fourteenth Amendment substantive due process claim for failure to protect against Defendant Cribari is **dismissed without prejudice**. *See Reynoldson*, 907 F.2d at 127 (stating that prejudice should only attach to a dismissal when plaintiff has not made allegations "which, upon further investigation and development, could raise substantial issues").

## D.    Fourteenth Amendment Equal Protection Claims

Defendants do not address the merits of Plaintiff's equal protection claim in the

present Motion [#22].  Nevertheless, because Plaintiff proceeds in forma pauperis, the Court may sua sponte examine whether Plaintiff has sufficiently stated an equal protection claim.  28 U.S.C. § 1915(d)(e)(2) ("the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted[.]").  Accordingly, the Court reviews the merits of Plaintiff's equal protection claim against Defendants Raemisch and Cribari pursuant to 28 U.S.C. § 1915.

An equal protection violation occurs when the government treats someone differently from another person who is similarly situated, without adequate justification for the difference in treatment.  *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence*, 927 F.2d 1111, 1118 (10th Cir. 1991).  As a threshold matter, the plaintiff must demonstrate that she was treated differently from others who were similarly situated to her.  *Brown v. Montoya*, 662 F.3d 1152, 1172-73 (10th Cir. 2011); *see Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994) (prisoner asserting an equal protection violation must show he was treated differently from other prisoners who are similar to him "in every relevant respect").  Even "slight differences in [inmates'] histories" render them not "similarly situated" for purposes of an equal protection analysis.  *Templeman*, 16 F.3d at 371.

Additionally, Plaintiff bears the burden of alleging discriminatory intent.  To meet that burden, a plaintiff must provide allegations demonstrating that a discriminatory purpose was a motivating factor in the decision challenged by the complaint.  *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988).  "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences.  It implies that the decision maker . . . selected or reaffirmed a particular course of action at least in part 'because of,'

not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

Construing the Amended Complaint [#9] liberally, Plaintiff alleges that Defendant Raemisch violated her Fourteenth Amendment right to equal protection by permitting a policy whereby parolees with mental health issues, like Plaintiff, were forced to reside in homeless shelters without receiving appropriate "assistance, supervision and guidance." *Am. Compl.* [#9] at 6. Plaintiff further alleges that Defendant Raemisch "knew of the risks, knew the statistical data in regards to paroling offenders homeless [sic], namely at risk mental health offenders like [P]laintiff, and failed to act in intervening to remedy the situation or make proposed changes to ensure proper assistance and supervision was undertaken by his subordinates[.]" *Id.*

With respect to Defendant Cribari, Plaintiff appears to assert an equal protection claim against him for his failure to: "properly train his subordinates"; intervene "regarding [Plaintiff's] safety and security and conditions of confinement while on parole"; and "properly ensure at risk mental health offender[s] like [P]laintiff[ ] were assisted and supervised in accordance with proper parole standards[.]" *Id.* Finally, Plaintiff states, without attributing fault to any one Defendant, that "other offenders . . . were given hotel vouchers first instead of at risk mental health offenders like [P]laintiff[.]" *Id.* at 7.[8]

---

[8] For the first time in her Response [#29], Plaintiff appears to allege that the differential treatment she received during her parole was also attributable to her being transgender. *Response* [#29] at 3. As an initial matter, Plaintiff may not effectively amend her complaint by alleging new facts in her Response to the instant Motion. *See In re Qwest Comm. Intern., Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004). In testing the sufficiency of Plaintiff's allegations, the Court is required to evaluate only the allegations made in the operative complaint. *See Mobley*, 40 F.3d at 340. Nevertheless, the Court notes that, to date, the Tenth Circuit "has not held that a transsexual plaintiff is a member of a protected suspect class for purposes of Equal Protection claims." *Druley v. Patton*, 601 F. App'x 632, 635 (10th Cir. 2015) (citing *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215,

First, Plaintiff has not shown that she was similarly situated in all material respects to others on parole. Therefore, her vague and conclusory assertions are insufficient to state a claim for relief under the Equal Protection Clause. *See Straley v. Utah Bd. of Pardons*, 582 F.3d 1208, 1215 (10th Cir. 2009) ("[B]are equal protection claims are simply too conclusory to permit a proper legal analysis."); *Ketchum v. Cruz*, 775 F. Supp. 1399, 1403 (D. Colo. 1991) (a pro se litigant's vague and conclusory allegations that his federal constitutional rights have been violated do not entitle him to a day in court regardless of how liberally the court construes such pleadings), *aff'd*, 961 F.2d 916 (10th Cir. 1992). Moreover, given the individualized nature of parole decisions, any "claim that there are no relevant differences between [Plaintiff] and other inmates that reasonably might account for their different treatment is not plausible or arguable." *Templeman*, 16 F.3d at 371.

Second, Plaintiff fails to carry her burden to sufficiently allege discriminatory intent. Aside from her conclusory assertion that Defendant Raemisch knew of certain unidentified risks, Plaintiff fails to demonstrate that a discriminatory purpose was the motivating factor behind any action taken by either Defendant Raemisch or Defendant Cribari. *See Watson*, 857 F.2d at 694. Indeed, Plaintiff appears to allege that she received the same treatment as other parolees but should have received additional "assistance, supervision and guidance" given her mental health risks *Am. Compl.* [#9] at 6.

Finding that no equal protection violation has sufficiently been alleged, Plaintiff's Fourteenth Amendment equal protection claims against Defendants Raemisch and Cribari are **dismissed without prejudice** pursuant to 28 U.S.C. § 1915(d)(e)(2). *See*

---

1227-28 (10th Cir. 2007); *Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995)).

*Reynoldson*, 907 F.2d at 127 (stating that prejudice should only attach to a dismissal when plaintiff has not made allegations "which, upon further investigation and development, could raise substantial issues").

### E. Fourteenth Amendment Procedural Due Process Claims

Similar to Plaintiff's equal protection claims, Defendant's Motion [#22] does not address Plaintiff's reference to an alleged violation of her Fourteenth Amendment right to procedural due process. Accordingly, because the Court finds that Plaintiff's allegation are wholly insufficient to state a comprehensible procedural due process claim, the Court addresses this claim pursuant to 28 U.S.C. § 1915.

Plaintiff must make two showings in order to proceed on a procedural due process claim. *See Bartell v. Aurora Public Schs.*, 263 F.3d 1143, 1149 (10th Cir. 2001). First, she must show that she possesses a protected liberty interest. *See id.*; *Veile v. Martinson*, 258 F.3d 1180, 1184-85 (10th Cir. 2001). Second, she must show that the procedures used in addressing her liberty interest were inadequate under the circumstances. *See Bartell*, 263 F.3d at 1149.

In the Amended Complaint, Plaintiff relies on the same factual allegations underlying her equal protection claim to assert a procedural due process violation against Defendants Raemisch and Cribari. [#9] at 6 ("This violates [P]laintiff's Fourteenth Amendment rights based upon the equal protection clause and a procedural due process violation."). Thus, liberally construing her complaint, Plaintiff appears to assert that, because of her mental health issues, she has a constitutionally protected liberty interest in greater "assistance, supervision[,] and guidance" which Defendants Raemisch and Cribari allegedly failed to provide while she was on parole. *Am. Compl.* [#9] at 6-7. To the extent that this is what

-24-

Plaintiff is alleging, the Court has already held that parolees do not have a constitutional right to their desired medical treatment. *Order to Dismiss in Part and to Draw Case* [#11] at 3 (citing *Birdsall*, 2008 WL 4080197, at *4 ("a parolee has no federal constitutional right to medical treatment or rehabilitation services"); *Andrade v. Christ*, No. 08-cv-01649-WYD-KMT, 2009 WL 2848984, at *11 (D. Colo. Sept. 1, 2009) ("a parole officer's duty to provide medical care to a parolee is far from clear"); *Davis v. McCleary*, No. 17-cv-00659 (PKC), 2017 WL 2266856, at *5 (E.D.N.Y. May 23, 2017) (collecting cases showing a parolee does not have a constitutional right to mental health treatment); *Mitchell v. Kallas*, 895 F.3d 492, 502 (7th Cir. 2018) ("parole officers may have no duty under *Gamble* to provide a parolee with medical care or ensure that she receives it")).

Therefore, because Plaintiff's factual allegations fail to show that she has a protected liberty interest, she fails to state a cognizable procedural due process claim. *See Bartell*, 263 F.3d at 1149. Accordingly, Plaintiff's Fourteenth Amendment procedural due process claims against Defendants Raemisch and Cribari are **dismissed without prejudice** pursuant to 28 U.S.C. § 1915(d)(e)(2). *See Reynoldson*, 907 F.2d at 127 (stating that prejudice should only attach to a dismissal when plaintiff has not made allegations "which, upon further investigation and development, could raise substantial issues").

## F. Official Capacity Claims

Plaintiff brings her claims against Defendants in their official capacities in addition to their individual capacities. *Am. Compl.* [#9] at 2-3. However, because Plaintiff has failed to state a constitutional claim against Defendants in their individual capacities she cannot state a constitutional claim against them in their official capacities under the same facts.

*See Carbajal v. Morissey*, No. 12-cv-03231-REB-KLM, 2014 WL 1301532, at *20 (D. Colo. March 31, 2014). Accordingly, the Motion [#22] is **granted** to the extent that Plaintiff's claims against Defendants in their official capacities are **dismissed without prejudice**. *See Reynoldson*, 907 F.2d at 127.[9]

### IV. Conclusion

Accordingly, for the reasons set forth above,

IT IS HEREBY **ORDERED** that the Motion [#22] is **GRANTED**. Plaintiff's claims for monetary damages against Defendants in their official capacities and for relief under the Eighth Amendment are **DISMISSED with prejudice**. All other claims for relief addressed in the Motion are **DISMISSED without prejudice**.

IT IS FURTHER **ORDERED** that Plaintiff's Fourteenth Amendment equal protection and procedural due process claims against Defendants Raemisch and Cribari are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(d)(e)(2).

IT IS FURTHER **ORDERED** that Plaintiff shall file any second amended complaint further alleging the factual basis for her claims **no later than August 12, 2019**.

Dated: July 12, 2019

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge

---

[9] Because the Court finds that Plaintiff has failed to state a claim upon which relief can be granted, the Court does not address Defendants' arguments regarding the additional relief Plaintiff seeks in the Amended Complaint [#9]. *See Motion* [#22] at 12-13.